STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ED-
WARD B. TWARDUS, JOSEPH HACK AND DAVID POLLI-
KOPFF, PLAINTIFFS IN ERROR.

Argued October term, 1927—Decided February 8, 1928.

Before Justices PARKER, MINTURN and CAMPBELL.

For the plaintiffs in error, *J. Victor D'Aloia (John O. Bigelow,* of counsel).

For the defendant in error, *Joseph L. Smith.*

PER CURIAM.

The plaintiff in error Edward B. Twardus, a practicing attorney in the city of Newark, was convicted upon an indictment which contained two counts, the first charging a conspiracy to burn the building at 24–26 Mechanic street, Newark, with attempt to prejudice the insurance companies. This count the state subsequently abandoned.

The second count charged the defendant Twardus with conspiring with Joseph Hack and David Pollikopff to burn the said building. The defendants Hack and Pollikopff pleaded non vult, but Twardus went to trial and was convicted. Twardus was practically the owner of the premises in question in the name of the Real Estate Exchange, Incorporated, of which company he was the owner of two-thirds of the outstanding capital; the other third was owned by Herbert I. Segal. The property was purchased for $188,000, and $19,500 was paid in cash; $168,500 was paid by assuming two mortgages. Upon the property was a four-story building of brick and timber construction.

Twardus planned to convert the building into a modern office building for architects, lawyers, surveyors and other professions. It was insured in the sum of $8,500, but was practically vacant from the time he purchased it until the time of the fire on December 16th, 1926, at one-thirty o'clock in the morning.

The defendant Twardus did not have sufficient cash to pay the taxes which accrued in December, 1926, nor did he have sufficient money to pay the current expenses of managing the property. He gave a check for the first payment of $9,822.08,

which was returned by the bank for insufficient funds. This check he subsequently made good, but was never able to meet the current expenses on the property, which was nearly always vacant, without rent or income, and he was finally unable to meet the interest and installments due on the mortgages.

It was in evidence that the fire was of incendiary origin and existed in ten separate places on the premises. It was also proved that Hack and Pollikopff set fire to the building, and to support the averments in the indictment the state called thirty witnesses. There was ample proof adduced to show that Twardus was one of the conspirators to set fire to the building, in addition to the admissions by Hack and Pollikopff, his co-conspirators. They bought the five-gallon cans which contained the gasoline in two stores, and they had the cans filled with gasoline. The car which carried the gasoline cans was identified by its number and was found in the rear of the house in which Hack resided. Both Hack and Pollikopff testified that after placing the cans in the building they went to the apartment of two ladies on Broad street, that they left this apartment about midnight, set fire to the building on Mechanic street, and then returned to the apartment. In this they were corroborated by the two ladies.

In its main essentials this testimony was denied by the defendant Twardus so far as it affected him in his relations with the conspirators.

Hack confessed that Twardus employed him to burn the building, and that he and Twardus frequently went out together in the automobile of Twardus; that Twardus gave the key of the building to Hack and reminded him that the only way he could get money was to burn down the building. Twardus gave him $25 to buy gasoline and to hire a car for the purpose of carrying the gasoline to the Mechanic street house. Hack afterwards met Pollikopff and asked Pollikopff to help him to set fire to the building. These two conspirators, Hack and Pollikopff, spread the gasoline on the second and third floors of the building and set it on fire at half-past one in the morning of December 16th, 1926. On that day Hack called up Twardus on the telephone and asked him how everything was, and Twardus said that everything was

O. K., and the following day Hack told Twardus that he wanted to leave town, and wanted money. Twardus gave him $6. The following day Hack again met Twardus and asked for more money to leave town. Twardus gave him $20 more and drove him to the Lehigh Valley railroad station, and informed him when leaving that if he wanted more money to call him up and more money would be sent to him.

Hack and Pollikopff thereafter went to Bethlehem, Pennsylvania, where demand was made again upon Twardus for more money, which was sent by Twardus to Hack in the form of a Western Union money order addressed to Jack Dawson, Bethlehem, Pennsylvania, the name which Hack subsequently used. Thereafter the pair went to Stroudsburg, Pennsylvania, and again telephoned Twardus for money, which was again forwarded by Western Union money order.

Thereafter Hack and Pollikopff returned to Newark, and on several occasions met Twardus, who informed Hack that things looked pretty tough, but gave the two additional money.

Testimony of this character, with which the case is replete, need not be adduced in detail. It must suffice to say that our examination of this testimony for the state, as well as the denial of the same by Twardus, satisfies us that the trial court did not err in its charge to the jury, since these questions were all relevant to support the contention of the state that a conspiracy had been entered into between the defendants Twardus and Hack and Pollikopff for the purpose of burning the building as charged in the second count of the indictment. The question, therefore, became essentially one of fact for the jury to determine.

The other defendants, Hack and Pollikopff, were boys, one twenty-two years of age and the other twenty, and the jury were warranted in inferring from the testimony that they were completely under the control and domination of Twardus, and that his was the guiding hand in the creation and execution of the conspiracy. The proof upon that question was ample and clear, if the jury believed it, in the light of all the testimony and the presence of the co-conspirators as well as the other witnesses for the state.

We observe nothing in the case that would lead us to the conclusion that the verdict of the jury was, as is argued, against the weight of the testimony. We find it to be consistent with the testimony if the jury believed the witnesses and the state's proof.

The question of motive on the part of Twardus was entirely one for the jury under the evidence. The credit which should be given to the two co-conspirators, as well as to the plaintiff in error, Twardus, in view of their testimony and their records, was also a question for the jury.

The charge of the trial court as to the uncorroborated testimony of an accomplice and the effect the jury should give to the same was legally proper, and, if anything, was favorable to the plaintiff in error, and the jury were sufficiently cautioned by the court regarding the reliability of the testimony of Hack and Pollikopff as co-conspirators.

The telegraphed money orders were properly admitted, as well as the testimony of Mr. Osborne, the handwriting expert. The same may be said of the proof of the telephone calls from the co-conspirators in Bethlehem and Stroudsburg.

We have examined the rulings of the court on the questions of the admission of testimony and the rejection thereof, as well as the court's refusal to postpone the case to another day for the purpose of giving the defendant an opportunity to produce experts to contradict the expert of the state, Mr. Osborne, and we find no error therein.

We have examined the charge of the court in its entirety, and we find that the legal exceptions directed thereto are without substance, and, on the whole, we find the charge of the court eminently fair to the defendant and in nowise prejudicial to his claim of innocence.

The conclusion we have reached is that there was sufficient testimony in the case to justify the conviction, if the jury under all the circumstances, as well as the independent testimony supplied by the state, believed the state's case and did not credit the defendant. This was evidently the basis of the jury's verdict for conviction, and we see no reason for disturbing that result.

The judgment of conviction will therefore be affirmed.